Commence with reading the calendar and commence with the first case, and that would be Bushey v. Berryhill. Good morning, Your Honors. I'm Mark Schneider, representing Tina Bushey, the appellant, in this Social Security appeal. And in 2015, this Court denied her previous appeal based on the same impairments because her arguments relied on evidence that was outside the record at that time. That decision is final as to her disability prior to April 19, 2012. So we're here dealing only with the issue of whether she's been disabled since April 2012. But now the record shows that she meets her equals, listing 1.04 for her spinal impairment, because the Commissioner's own examining consultant, Dr. Wasif, found a positive straight leg raise in both sitting and supine positions. And this is a definitive sign of a lumbar radiculopathy. And this confirms the other objective evidence. In 2009, the MRI showed L4-5 disc herniation that impressed on the thecal sac. It also indicated canal stenosis and mild bilateral neural foramenal encroachment, which means a nerve impingement. In 2010, the MRI showed further disc degeneration and bilateral recess stenosis and narrowing in the spine where the nerve goes through. Are you referring to diagnostic procedures and evaluations that are done before 2012? Yes. And they may shed light on her disability post-April 2012. But help me understand what has changed, how these should now be looked at in a different way. Well, I think even previously there was evidence, but now we have the definitive evidence that Dr. Wasif found the positive straight leg raise, which is a definitive test of a radiculopathy, and that is what listing 1.04 talks about. This confirms those tests. And in addition, Dr. Wasif noted that she walked with a limp, that she couldn't stand. Let me see if I understand your argument. Your argument essentially is that the denial of the previous one was because you, your client, did not introduce evidence at that time or didn't introduce it in ways that was acceptable. Correct. And so she lost because she didn't meet her burden. Correct. But that that evidence, which is relevant to her continuing situation, now is properly introduced, and it is on that basis that you are arguing that she is covered. Yes. And it's not just based on the spinal impairment. No, no, I understand. I just wanted that point. So we have additional evidence on the spinal impairment. In addition, we lost last time because there was not an IQ test on the record, and I had argued previously that the judge should have ordered a consultative IQ test, and the court found that it didn't have to based on that record. So now there is an IQ test. It shows a full-scale IQ of 66, which is considered to be mild mental retardation. It was an accurate, valid test. The commissioner did not do anything to try to get their own test or dispute the validity of this valid test. But the standard, even then, they've now removed it, but the standard even then required more than the IQ to be between 60 and 70 to be an automatic disability, didn't it? It said an IQ of this plus additional signs. Right. Yeah, okay. So now we have, but you don't even need to meet a listing. Sorry about that. That's okay. It's the first time it's rung in years. I hope that doesn't mean that my time is up. It may mean my time is up. Okay, next contestant. No, because as long as there's a significant other impairment, I believe that she meets and equals listing 104 in and of itself, but with the IQ of 66, and that's presumed to have started before she was 22. There's no evidence that she wasn't. And in addition to a significant other impairment, she meets listing 12.05. The commissioner and the ALJ had all these suggestions that she probably had a cognitive impairment to rule out borderline intelligence and yet did not order a consultative exam. So the only evidence on the record is that she meets listing 12.05. And I can go on that the ALJ seriously erred by discrediting her testimony. And Williams B. Bowen, a seminal case from this court, says, when the subjective testimony of pain and disability given by a claimant is consistent with the objective medical facts and experts' opinions, a finding of poor credibility is not supported by substantial evidence. So here we have all these objective tests that would show why you would have severe pain. Well, but the finding of poor credibility in this case was based on inconsistent statements that she made. So that's a separate issue about credibility. It wasn't just credibility in terms of these tests. It was whether when she testified at different times she said things that were inconsistent. Now, you know, one can also explain that in terms of somebody with a low IQ, that they are likely to do that and that that's not a matter of credibility in the sense of trying to be false. But I don't think you can just say her credibility was fine because. But it's not substantial evidence to find that she was not in pain when you have these tests that support her pain. Maybe the judge can say you are not perfectly consistent all the time, but it does not raise to the level to say you're not being honest or exaggerating. And no doctor ever felt she was exaggerating. And so there certainly is not substantial evidence to find that she's not in pain. So even if she doesn't meet 1.04, her credible testimony about her pain would be enough to keep her from doing any work. She talked about the side effects she has from her morphine, which helps ease her pain. And the judge did not consider that. I don't think any reasonable person looking at the evidence from both sides could conclude that she's not disabled. And I won't discuss the immune disorder in carpal tunnel unless you'd like me to. Thank you. Thank you. May I proceed? Your honors, may it please the court, Hasib Fatmi on behalf of the Acting Commissioner of Social Security. Good morning. This case boils down to an individual claimant who has applied for disability benefits on four separate occasions and has appealed that same decision to the appeals council, to district courts, and to this court numerous times with very similar and cumulative evidence as what the record shows before you today. And each time, the district courts and this court affirmed the ALJ's decision that Bushy was not disabled. And this court should do the same today. Now, I want to address the evidence before the record. It is virtually identical and cumulative to the evidence that had been presented in Bushy 1 and Bushy 2. The only substantively new piece of evidence is this IME, this independent medical evaluation from Dr. Richard Liotta, which a post in council discussed. And that's the first piece of evidence that I want to discuss today. This is the evaluation that included the IQ test? Yes, your honor. This is the IQ test. Now, your honor accurately stated that under listing 12.05, it is insufficient to simply show an IQ score. There are other requirements that Bushy must show before even getting to the subsections of listing 12.05. And this court actually explained the application of listing 12.05 and 05C in Talavera v. Astro, which is extremely similar to this case and extremely on point. This court explained in Talavera that before even considering the IQ test, an individual claimant must first meet the capstone definition found in 12.05, which is as follows. An intellectual disability, which refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, which is before age 22. Here, both the ALJ and the district court correctly explained that Bushy did not satisfy that definition. Listing 12.00H defines adaptive functioning and gives the accurate criteria which an ALJ is supposed to consider, and specifically the criteria that a claimant is supposed to prove. These include an individual's ability to learn and use conceptual, social, and practical skills dealing with common life demands. It comes from an individual's ability to deal in the home and in community and amongst Let me just be clear. You are saying that she hasn't shown these things. You are not making a point as to whether these were before 22 or after. Both, Your Honor, actually. I didn't see that part, really, in the brief survey arguments. I saw a great deal about whether she had these things, but I didn't really see much about the other, and I just wanted to be clear. Yes, Your Honor. The operative point here is twofold. First, as this is a decision considering res judicata with prior decisions binding on the case at bar, the operative facts are the evidence during the relevant period. However, she must still show that these impairments manifested before age 22. Now, going to what the ALJ reasoned based on both the medical and the non-medical evidence, the ALJ discussed at length how she did not show these deficits in adaptive functioning. Most operatively, she stated herself that she was able to read, and I beg your pardon, Your Honor, this is page 10 of the ALJ's decision, which is page 19 of the record. The ALJ explained how she could read and write. She can follow instructions. She can drive. She worked as a cashier during her prior application periods. She had near independence of activities of daily living. And these facts are extremely probative, considering that this Court already held in Talavera that these are the same factors that an ALJ must consider when considering an individual's deficits in adaptive functioning. Here, both the medical and the non-medical evidence, including Bushy's own testimony, do not support her allegation that she satisfied the listing. And once again, this Court held that this is the operative consideration even before getting to the... I'm a little troubled when you talk race judicata, because there are any number of cases where we have held that somebody was not disabled at time 1 but found that the person was disabled at time 2. And since there's a heavy burden on a person to show disability, it may well be that at time 1, the person has not shown it because they haven't brought in evidence or they haven't brought in certain things, and yet at time 2, when they have that evidence. Now here, you didn't have the IQ before. That doesn't mean that she has met the requirement, but I find it hard to suggest that any finding before would bar her from showing that with the IQ. If, in addition to the IQ, she now has stuff which may have been there before but by itself was not enough, that that wouldn't be enough now. Your argument sounds as if you're overstating. That's absolutely correct, Your Honor. And in fact, when looking at the listing analysis, the Commissioner's not arguing that race judicata bars consideration of the listing. The Commissioner's arguing that even with all of this evidence together, even with all of the medical and non-medical evidence, Bushy still failed to show that she satisfied this requirement of adaptive functioning. And once again, this Court already held in Talavera that an IQ test is an individual and discrete requirement under 12.05 that is wholly separate from adaptive functioning. It does not satisfy the capstone definition of adaptive functioning, which is something that Bushy must also... So your argument, just following up on the issue preclusion point, is not that the evidence of her ailments or adaptive functioning before 2012 can't be considered. It's just that when you look at the whole picture, I mean, she's precluded from litigating whether she was disabled in that earlier period, but the evidence can be considered in its totality. Yes, Your Honor. Yes, Your Honor. I next want to address the arguments regarding listing 1.04. Once again, the evidence does not show that she meets listing 1.04. Now, as a prerequisite, according to the listing, an individual must show a disorder of the spine that results in a compromise of a nerve root or spinal cord. Now, 1.04a requires evidence of nerve root compression characterized by neuro-autonomic distribution of pain, limitation of motion of the spine, and motor loss accompanied with sensory or reflex loss. Now, the ALJ considered this and heavily relied on treatment notes from Dr. Ellen Gogan, who was a pain management specialist from Plattsburgh, whom Bushy saw prior to the relevant period and during the relevant period on roughly a monthly basis. Each month, each of these physical examinations showed normal, benign findings. Stable findings, no pain or controlled pain, periodic headaches that went away with medication, full strength, full range of motion, no sensory loss, no limitations in spinal ranges of motion. This contradicts listing 1.04a. Listing 1.4b requires inflammation of the spinal membrane. There is no evidence in the record to show that. And listing 1.04c requires inflammation of spinal nerves. Once again, there is no evidence to show that either. The operative fact here is, going back to the substantial evidence standard, that it is up to a claimant to... Excuse me. A claimant bears the burden of proof and must show through medical evidence that they satisfy the listing. Here, and I beg your pardon, the analysis considers the record as a whole. Now, here we have monthly treatment records from a treating physician, a pain management specialist, who treated her for these very impairments. And month after month, these physical examinations showed normal and benign findings. And I want to point something else out regarding Dr. Wasif's opinion. Opposing counsel pointed to Dr. Wasif's opinion, which was dated September 26, 2013. Not only did this physical examination show full cervical range of motion, full extremity and back range of motion, but these reports were wildly inconsistent with the reports from Bushy's treating physician. Specifically, once again, this report was dated September 26, 2013. But nine days later, she once again saw Dr. Gogan, and these impairments which she alleged with Dr. Wasif vanished nine days later, and she once again had a normal and benign physical examination. She is treated by Dr. Gogan for a lengthy period of time for chronic pain, and she sees him 24 times between October 2012 and November 2014. You're right that he reports she can perform activities of daily living in November and December 2014, but she is under constant treatment for chronic pain. Yes, Your Honor. I see that my time has expired. May I answer and conclude? That's correct. However, Dr. Gogan once again found that her symptoms were stable, and this Court has already held that diagnoses of impairments are insufficient. An individual must show through medical evidence that those diagnoses translate to limitations in functioning, and Dr. Ellen Gogan's consistently benign physical examination results do not support Bushy's allegation, but instead provide substantial evidence to support the ALJ's RFC determination. And for that reason, this Court should affirm the decision of the ALJ. Thank you. Thank you. Dr. Gogan, Ellen Gogan, is a local pain doctor, and she was prescribing morphine and methadone, very strong narcotic medications. And in fact, the reason that my client had to go to her that many times was to get her prescription refilled, and that's what pain doctors often do. She was not getting any other treatment from Dr. Gogan. Now, stable does not mean that you're not in pain or able to work. Stable just means you're not getting worse, and Dr. Gogan did note that her pain was tolerable, but tolerable with this kind of pain doesn't mean that you can work. The other doctors all did show over the years reflex loss and loss of range of motion. Regarding her IQ, Dr. Welch, the commissioner's own consultant, Dr. Gogan twice felt that she had severe cognitive limitations. Are you making any argument that the medication that she took in order to make the pain tolerable rendered her incapable of working? Yes. Yes, that was not even considered by the ALJ. But even if she doesn't meet 1205 strictly, I think she does under Talavera, she said she worked as a cashier and a stocker at Walmart, but then she said she had to quit because she couldn't lift stuff. She did note that she can't read well and she can't count, but that she could use a calculator. So I'm not sure that shows you really have the ability to perform other jobs in this situation. I think if you look at, even if she didn't meet the listings for spinal or mental, if you look at the combination of all these, she doesn't have the residual functional capacity to do any work. She has a prescribed cane that she brought to Dr. Wasif. There's no evidence that she was not being honest about that. Dr. Wasif found that she needed a cane to walk. In this case, I think the ALJ egregiously erred. I don't normally come back to this court three times, and I didn't necessarily agree with the last decision, but that was the decision, and I accept it.  And you should remand for benefits only. I do not think we need to have another hearing with this record as a matter of law. She is disabled and deserves to get disability benefits. Thank you. Thank you both. We'll take the matter under advisement.